In re GREAT NORTHERN
PAPER, INC., Debtor.

Bangor Hydro–Electric Company,
Appellant,

v.

Gary M. Growe, Trustee and
Great Northern Paper,
Inc., Appellees.

Bankruptcy No. 03–10048.
No. CIV. 04–192–P–H.

United States District Court,
D. Maine.

Jan. 6, 2005.

Michael Joseph Gartland, Marcus, Clegg & Mistretta, P.A., William S. Harwood, Stephen A. Johnson, Verrill & Dana, Portland, ME, for Bangor Hydro–Electric Company, Appellant.

Daniel Amory, Melissa A. Hewey, Drummond, Woodsum & MacMahon, Portland, ME, Michael D. Vhay, Piper Rudnick LLP, Boston, MA, for Great Northern Paper, Inc., Gary M. Growe, Trustee, Appellees.

## MEMORANDUM DECISION ON BANKRUPTCY APPEAL

HORNBY, District Judge.

When a bankruptcy court declares that the Bankruptcy Code's automatic stay provision applies to a corporation's activity, but does not hold the corporation in contempt or issue an injunction against the activity, and further declares that the

bankruptcy court may permit the activity in the future, has the bankruptcy court issued a final order that is subject to appeal? I conclude that the answer is "no," and dismiss the appeal under 28 U.S.C. § 158(a)(1).[1]

Great Northern Paper filed a Chapter 11 case on January 9, 2003. The bankruptcy court converted it to Chapter 7 on May 22, 2003, and appointed a trustee. In July, Bangor Hydro–Electric learned that the Chapter 7 trustee claimed that Great Northern Paper was entitled to reimbursement dating back to 1977 for "headwater benefits"[2] for which Bangor Hydro–Electric might be responsible, and that the trustee would claim these benefits as part of the bankruptcy estate.

On August 6, 2004, Bangor Hydro–Electric filed with the Federal Energy Regulatory Commission ("FERC") an application for approval of a Headwater Benefits Settlement Agreement ("Agreement") that it had apparently entered into with Great Northern Paper five years earlier in 1999 (actually a "Memorandum of Understanding" dated May 7, 1999). Section 5(b) of the Agreement provided: "[Great Northern Paper] relinquishes any right it may have to charge [Bangor Hydro–Electric] any amounts for headwater benefits enjoyed by [Bangor Hydro–Electric] prior to the effective date of this Memorandum due to the operation of [Great Northern Paper]'s hydro storage projects located on the West Branch of the Penobscot River."

On August 19, 2004, the trustee filed a stay motion in the bankruptcy court as a result of Bangor Hydro–Electric's filing with FERC. The trustee sought an order of contempt against Bangor Hydro–Electric, claiming that its action in seeking FERC approval violated the Bankruptcy Code's ("Code's") automatic stay provision, 11 U.S.C. §§ 362(a)(1), (3).[3] Bangor Hydro–Electric opposed the motion, arguing that the Code's exception for governmental action, 11 U.S.C. § 362(b)(4), applied.[4]

On September 8, 2004, Bankruptcy Judge Kornreich entered an Order on the trustee's motion. He ruled that the automatic stay did apply to Bangor Hydro–Electric's conduct, that the Code's governmental action exception did not apply and that Bangor Hydro–Electric's conduct violated the automatic stay provision. He also ruled, however, that either Bangor Hydro–Electric or the trustee could bring

---

1. The appellant, Bangor Hydro–Electric, has not requested leave to appeal an interlocutory order. See 28 U.S.C. § 158(a)(3).

2. A downstream hydro-electric facility (here, owned by Bangor Hydro–Electric) gains increased power production by virtue of upstream dams (here, owned by Great Northern Paper). As a condition of a facility's Federal Energy Regulatory Commission ("FERC") licensure, the FERC may require reimbursement for these benefits ("headwater benefits"). 16 U.S.C. § 803(f). FERC regulations permit consensual settlement of such claims, subject to FERC approval. 18 C.F.R. § 11.14(a)(1).

3. Under the automatic stay provision, the filing of a voluntary, joint or involuntary petition in bankruptcy

operates as a stay, applicable to all entities, of—

(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ...

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. §§ 362(a)(1), (3).

4. Section 362(b)(4) excepts from the automatic stay provision "the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's or organization's police and regulatory power." 11 U.S.C. § 362(b)(4).

a declaratory judgment action to determine whether the Memorandum of Understanding was enforceable against Great Northern Paper as of January 9, 2003, the bankruptcy petition date. His Order stated that if Bangor Hydro–Electric were successful in proving an enforceable agreement, he would modify the stay so that Bangor Hydro–Electric could then proceed to seek FERC approval. Judge Kornreich delayed action on deciding whether contempt had occurred and on any damages.

Generally, an appeal can be taken only from "final" orders. The First Circuit has recognized that for bankruptcy appeals, "[t]he finality issue is complicated," that it is "is more flexibly applied than with regard to district court judgments," and that "no uniform and well-developed set of rules exists and on many points there is a good deal of uncertainty." *Brandt v. Wand Partners,* 242 F.3d 6, 13 (1st Cir.2001). The greater flexibility exists in part "[b]ecause bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings." *Shimer v. Fugazy (In re Fugazy Express, Inc.),* 982 F.2d 769, 775 (2d Cir.1992).

Like the First Circuit's Bankruptcy Appellate Panel, I apply the standard adopted by the Second Circuit in *Fugazy:* to meet the test of finality for a bankruptcy appeal, an order "must completely resolve all of the issues pertaining to a discrete claim, *including issues as to the proper relief,*" *id.* at 776 (emphasis added). *See Caterpillar Financial Services Corp. v. Braunstein (In re Henriquez),* 261 B.R. 67, 70 (1st Cir. BAP 2001) (quoting *Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.),* 101 F.3d 882, 885 (2d Cir.1996)). Here, the bankruptcy court did not rule on the proper relief. Aside from ruling that the automatic stay provision applied, the court reserved "without day" (*sine die,* we used to say, but "indefinitely" is probably what we meant) the question of contempt, damages and fees. *See Calcasieu Marine Nat'l Bank v. Morrell (In re Morrell),* 880 F.2d 855, 856–57 (5th Cir.1989) (finding no final appealable order because "[d]eterminations of liability without an assessment of damages are as likely to cause duplicative litigation in bankruptcy as they are in civil litigation, and because bankruptcy litigants may appeal to district as well as to appellate courts, the waste of judicial resources is likely to be greater"); *accord Brown v. Pa. State Employees Credit Union (In re Brown),* 803 F.2d 120, 122–23 (3d Cir.1986).

Moreover, the bankruptcy court hardly "resolve[d] all of the issues pertaining to a discrete claim," *Fugazy,* 982 F.2d at 776, since that court invited the parties to litigate the enforceability of the 1999 Memorandum of Understanding, stating explicitly that if the agreement were enforceable, FERC approval could then be pursued. In short, this was no final order, even under the more liberal and flexible standards for bankruptcy appeals.

The motion to dismiss the appeal is GRANTED.

SO ORDERED.